No. 77-1490. ALFORD *v.* FLORIDA. Sup. Ct. Fla. Certiorari denied.

MR. JUSTICE MARSHALL, with whom MR. JUSTICE BRENNAN joins, dissenting.

The issue presented is whether a sentence of death may constitutionally be imposed by a trial judge who has been made "aware" of, but states that he has not "considered," certain information in a presentence report not revealed to the defendant.

I

Petitioner was convicted by a jury of first-degree murder and rape in 1973. The trial judge, following the jury's recommendation, sentenced petitioner to death. The Florida Supreme Court affirmed the judgment, 307 So. 2d 433 (1975),

and this Court denied certiorari. 428 U. S. 912 (1976).[1] After our decision in *Gardner* v. *Florida,* 430 U. S. 349 (1977), the Florida Supreme Court directed the trial judge to file a response "stating whether he imposed the death sentence . . . on the basis of consideration of any information not known to appellant," and provided that petitioner would have an opportunity to move to vacate the sentence thereafter. The trial judge filed a response, stating that he had not considered any information not known to petitioner in imposing the death penalty.[2]

Petitioner then filed a motion to vacate the death sentence. He alleged that the "confidential evaluation" portion of the presentence report (which defense counsel had obtained after sentencing through clemency proceedings) affirmatively contradicted the trial judge's response, indicating that prior to sentencing the probation officer had given the judge certain information about petitioner which had not been disclosed to

---

[1] At that time, MR. JUSTICE BRENNAN and I dissented from the denial of certiorari. We noted there:

"Petitioner contends that his right of confrontation, guaranteed by the Sixth and Fourteenth Amendments, was violated because the transcript of the preliminary hearing testimony of a material prosecution witness was read at his trial and the prosecution, although it was aware that the witness would leave Florida prior to the trial, failed to use available procedures to assure the witness' presence at trial or to depose the witness before the trial began. See *Barber* v. *Page,* 390 U. S. 719 (1968). On the record in this case, we would grant certiorari and set the case for oral argument.

"In any event, the imposition and carrying out of the death penalty in this case constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. *Gregg* v. *Georgia,* [428 U. S. 153,] 227 (BRENNAN, J., dissenting); *id.,* p. 231 (MARSHALL, J., dissenting). We would therefore grant certiorari and vacate the judgment in this case insofar as it leaves undisturbed the death sentence imposed."

[2] The judge's "response" stated that he "did not consider information unknown to the Appellant in conjunction with any matter in this case." App. to Pet. for Cert. A12. Attached to this response was a letter written by the judge prior to sentencing, to the probation officer who prepared the

him. In a 4–3 decision, the Florida Supreme Court denied petitioner's motion and upheld the death sentence. 355 So. 2d 108 (1978).

The majority agreed with the State that there is a difference between a trial judge's being "aware" of and "considering" facts. It purported to find support in MR. JUSTICE STEVENS' statement in *Gardner, supra,* at 359–360, written on behalf of himself and two other Members of the Court,[3]

presentence report. The letter, which appears in App. II to Response to Pet. for Cert., is reproduced in its entirety below:

September 12, 1973

Joel Padgett, Probation Supervisor
Probation and Parole Department
County Courthouse
West Palm Beach, Florida

Re: Learie Leo Alford

Dear Joel:

I know you have expended a great deal of time, effort and conscientious evaluation in the preparation of the pre-sentence report concerning Learie Leo Alford. I recall that you indicated to me that the revelation of the confidential section of this report to the defense would be damaging and compromising to sources who had confided in you. I respect your judgment in this.

I feel, however, in a case in which the jury has recommended the supreme penalty known to our law, that there well may be a constitutional right to disclosure of this confidential section to the defendant. As far as I know, there is not yet a judicial decision on what the meaning of 'factual material' in Rule 3.713 (b) may be. I feel that if I cannot release the confidential section to the defendant, I should not review it myself in this particular case. I know that this means that I shall not have the benefit of a major portion of your work in this report because of this view and I regret that this is so.

Accordingly, do not deliver that section of your report to me.

Thank you.

Very truly yours,
MARVIN MOUNTS, JR.,
Circuit Judge.

[3] The Florida Supreme Court apparently mistakenly believed that MR. JUSTICE STEVENS was speaking for the Court. See 355 So. 2d, at 109.

that "[i]n those cases in which the accuracy of a report is contested, the trial judge can avoid delay by disregarding the disputed material." Without further analysis,[4] the majority concluded that "the trial judge complied with the requirements of *Gardner* and the motion to vacate is denied."

Justice Boyd, dissenting, argued that any facts of which the trial judge was privately made aware should have been disclosed to defense counsel with an opportunity to refute them. In his view, it was "unconstitutional for courts to impose sentences upon persons convicted of crime without affording the accused persons an opportunity to refute any information known to the sentencing judge." 355 So. 2d, at 110. Noting that absent such procedures, "incorrect representations, perhaps made in good faith," could be used by the court in setting punishment, the justice stated: "Such protection is more important in capital cases, where the defendant's life is at stake, than in any other kind of case." *Ibid.* Justice Hatchett also dissented, joined by Justices Boyd and Sundberg, arguing that the majority's distinction between "consideration" and "awareness" was not supported by our decision in *Gardner* and was inconsistent with the thrust of that opinion. He argued that a trial judge may constitutionally "disregard" material of which he is aware only after presenting it to the defendant for an opportunity to contest facts. 355 So. 2d, at 110.

## II

I continue to adhere to my view that the death penalty is unconstitutional under all circumstances. *Furman* v. *Georgia,* 408 U. S. 238, 314 (1972) (MARSHALL, J., concurring); *Gregg* v. *Georgia,* 428 U. S. 153, 231 (1976) (MARSHALL, J., dissenting). I would therefore grant certiorari and vacate the death sentence on this basis alone. However, as I wrote in *Gardner* v. *Florida, supra,* at 365, if the State is to be permitted to impose such an irreversible penalty it ought at the least to do

---

[4] The majority noted that a judge may be aware of proffered inadmissible evidence without considering it. *Ibid.*

so only through procedures that provide the maximum assurance of accuracy and fairness in the sentencing determination. In *Gardner*, we vacated a Florida death sentence imposed by a judge, in part on the basis of the confidential portion of a presentence report not disclosed to defense counsel. In the instant case, three of the seven justices on the Florida State Supreme Court believed that the procedures followed herein were unfair, unconstitutional, and not in conformity with this Court's opinion in *Gardner*. In so important an area as life and death, I should think this factor alone would have persuaded my Brethren to give plenary consideration to the issue.

The due process question raised by the dissents below is a substantial one. As noted below, "[t]he first paragraph of the confidential evaluation indicates that the sentencing judge 'was made aware of some of [the report's] facts' by the [probation] supervisor." 355 So. 2d, at 109. The trial judge anticipated our decision in *Gardner* to some extent and attempted to avoid reliance on facts not disclosed to petitioner.[5] But it is not disputed that the judge and the probation supervisor had *ex parte* communications in this case in which some adverse information about petitioner was imparted to the judge and not revealed to the petitioner.[6]

---

[5] See n. 2, *supra,* and n. 6, *infra.*

[6] The papers before us do not clearly reflect what particular facts the trial judge was made aware of. Petitioner has annexed to his petition an extract from a "Deposition of Joel Padgett," the probation supervisor who wrote the confidential evaluation. App. to Pet. for Cert. A15. Respondent states that the deposition was apparently taken after the motion to vacate the death sentence was filed, and has not been made part of the record or served upon counsel for respondent, Response to Pet. for Cert. 7; respondent does not, however, dispute the accuracy of its contents. In this deposition, Padgett stated that he told the judge over the telephone that a confidential informant who had been in the county jail with petitioner advised him that petitioner was involved with prostitutes. Padgett also stated that he might have told the judge on the phone that the informant stated that petitioner had admitted to him his guilt. At some point in their telephone conversation, Padgett testified, the judge had cut him off, saying he did not want to hear any more.

In this context, the distinction between "awareness" of adverse facts and "consideration" of them is one too tenuous on which to make a life turn. Persons acting in complete good faith may attempt to put out of their minds information received; with respect to many kinds of decisionmaking, we act on the assumption that they are successful in doing so. Yet we should not be blind to the fact that this "assumption" is often a mere fiction: surely we have all experienced the difficulty in actually excising from our consciousness apparently salient factors that have been brought to our attention. See *Lakeside* v. *Oregon,* 435 U. S. 333, 345 (1978) (STEVENS, J., dissenting). This is particularly true where, as is alleged to have occurred in the instant case, see n. 6, *supra,* a sentencing judge is advised *ex parte* that a defendant who went to trial had admitted to another inmate in the jail that he had committed the crime.[7]

Where imposition of so "unique" a penalty is concerned, a punctilious attempt to achieve complete, factual accuracy in decisionmaking should be insisted upon. This can be achieved only by requiring complete disclosure of every fact relating to the defendant that has come to the sentencing judge's attention, and by affording the defendant a complete opportunity to contest and rebut those facts. The spirit of our holding in *Gardner* requires no less. I agree with the three dissenting justices below that this standard has not been met here.[8]

For these reasons, I dissent from the denial of certiorari.

---

[7] Since petitioner's defense at trial was that of alibi, receipt of such information might have influenced the judge to enhance the sentence on the ground that the defendant deliberately permitted false testimony to be presented on his behalf. Cf. *United States* v. *Hendrix,* 505 F. 2d 1233 (CA2 1974), cert. denied, 423 U. S. 897 (1975).

[8] Sadly, this case once again illustrates the fallacy of the premise upon which some of my Brethren sustained the Florida death penalty statute in *Proffitt* v. *Florida,* 428 U. S. 242 (1976)—that the statute's procedures would eliminate inaccuracy, unfairness, and arbitrariness in the imposition of the death sentence.