**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James KIRBY, Defendant-Appellant.**

No. 87–5604.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 18, 1987.

Decided Feb. 4, 1988.

Henry Haile, Nashville, Tenn., (Court-appointed), for defendant-appellant.

Joe B. Brown, U.S. Atty., Nashville, Tenn., Robert Watson, William Cohen, argued, for plaintiff-appellee.

---

Before MARTIN and GUY, Circuit Judges, and JOHNSTONE, District Judge.*

PER CURIAM.

Following a jury trial, defendant, James Kirby, was convicted of conspiracy, 18 U.S.C. § 371; counterfeiting, 18 U.S.C. § 471; and passing and uttering counterfeit money, 18 U.S.C. § 472. On appeal, defendant raises two issues. Kirby claims that the court committed error requiring reversal when it allowed the jury to hear testimony indicating he was involved with illicit drugs. Kirby also claims it was error for the trial judge to instruct the jury that they could not hold it against Kirby that he elected not to testify when Kirby had objected in advance to the giving of this standard instruction. Upon review, we conclude that it was error for the trial judge to allow the drug testimony into evidence, but that such error was harmless. We find no error in the giving of the jury instruction. Accordingly, we affirm the conviction.

**I.**

During the autumn of 1986, Robert Caudill, a printer by trade, decided to make and pass some counterfeit money. Caudill enlisted defendant Kirby to help him. Kirby helped in both the making and passing of the counterfeit twenty dollar Federal Reserve Notes. Counterfeit notes were also passed by Robert Caudill's wife, Laurie; Belinda Randolph, a former girl friend of Kirby; and Erika Payne, a friend of the Caudills.

Erika Payne was caught passing the counterfeit money and confessed. She also agreed, in return for not being prosecuted, to help Treasury agents apprehend the others involved. At the conclusion of the investigation, all the other participants were indicted. The Caudills plead guilty, Belinda Randolph was put into pretrial diversion, and Kirby elected to stand trial. At the trial, the other three defendants all testified for the government against Kirby.

---

* Honorable Edward H. Johnstone, United States District Court, Western District of Kentucky, sitting by designation.

## II.

*The Drug Use Testimony*

Prior to commencement of the trial, the Assistant United States Attorney prosecuting this case discussed with the trial judge the possibility that the defendant and some of the witnesses who were scheduled to appear used drugs. The judge reserved any ruling until such an occasion arose.

On cross-examination of Robert Caudill, who had testified for the government, the following occurred:

BY MR. HAILE [defense counsel]:

Q. What was the source of your financial difficulties again, Mr. Caudill?

A. Hospital bills, house payments, car payment, medical bills, utilities.

Q. Anything else?

A. No, sir.

Q. Did you have a drug habit, Mr Caudill?

A. I didn't have a drug habit, but I was using drugs.

Q. And you were selling them, too, weren't you?

A. I was trying to.

Q. So you were selling drugs and you were counterfeiting money. Are you saying that there is no relationship between the fact you were in debt to your suppliers and the fact you were counterfeiting this money?

A. Excuse me?

Q. Are you saying there is no relationship between the fact you were in debt to your drug suppliers and the fact you counterfeited this money?

A. My trying to sell drugs and counterfeit money was a means that I was trying to get out of debt.

Q. Was Erika Payne your supplier?

A. No, she wasn't.

Q. Did she ever supply you with drugs?

A. No, she didn't.

After this cross-examination was completed, the prosecutor asked for a side bar conference. The following is part of what occurred:

MR. WATSON [Assistant U.S. Attorney]: As I mentioned earlier, one of the people that supplied drugs for this man was Mr. Kirby.

THE COURT: Yes.

MR. HAILE: We object to that. Any possible relevance is outweighed by prejudice.

THE COURT: I believe you opened the door on that, Mr. Haile. Overruled.

On re-direct examination, Assistant U.S. Attorney Watson asked:

Now, Mr. Haile asked you about using drugs. Was Mr. Kirby also involved with you in drugs?

A. Yes, he was.

MR. WATSON: No other questions, Your Honor.

Later on in the trial Erika Payne testified for the government and, on cross-examination, the following was put before the jury:

Q. [BY MR. HAILE]: Ms. Payne, were you involved in drug sales with Mr. Caudill?

A. No, I was not.

Q. Not in any way, shape, or form?

A. Not in any way.

Q. You didn't buy any from him?

A. Yes. We got some drugs from him. We didn't buy them. He just gave them to us.

Q. I thought you said you weren't involved in it?

A. Well I didn't know what you were asking me.

Q. He just gave you some?

A. Well, we had bought—I don't understand what you're asking for.

Q. Did you sell him any or up-front him, or give him any on credit?

A. No. I don't sell drugs.

Q. That didn't have anything to do with your trip to Michigan, to get drugs?

A. No.

Q. What kind of drugs did you get from him?

A. From who?

Q. Mr. Caudill.

A. Cocaine.

Q. What else?

A. Occasional joint. I didn't buy that.

Q. You just bought the cocaine?

A. Yes.

Q. He gave you the—does your guilty plea cover this, too, any drug activity?

A. Yes.

Q. That is part of the deal?

A. Well, I didn't get busted for any drugs.

Q. But isn't that part of the deal, that they will forgive all this stuff if you will just cooperate?

A. Yes.

MR. HAILE: Thank you. No further questions.

Again, a side bar conference followed this testimony:

MR. WATSON: Your Honor, Mr. Haile asked her about drugs. I anticipate if asked, she would say when she was doing drugs over there, she was doing it with Jimmy, too.

THE COURT: Leave that out.

MR. COHEN [Assistant U.S. Attorney]: No. What she would say, she saw Jimmy get drugs from Robert.

THE COURT: Don't ask that.

MR. COHEN: Okay.

■ It is apparent from the record that the trial judge was careful in his handling of the drug issue. Only one brief reference was made. Nonetheless, we find it was error for the trial judge to have allowed the government to pursue this subject. Defense counsel's inquiries on cross-examination were proper, as he was attacking the credibility of a defendant turned government witness. Involvement in other illegal activity such as drugs—which conduct was forgiven by the government in return for cooperation of the witness— properly bears on the credibility of the witness. It does not, however, as the trial judge ruled, open the door to similar inquiries about the defendant. Because the defendant did not testify, his credibility was not an issue.

Nevertheless, we find the error to be a harmless one because the inquiry made by the government was very brief, the trial judge allowed no further inquiry, and it was not made part of the government's closing argument. More importantly, however, the case against Kirby was so substantial that we can confidently conclude that this error was harmless as a matter of law. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

All of the other persons involved in this criminal episode testified against Kirby and had direct knowledge of his involvement. Additionally, the government gathered damaging evidence when Erika Payne was working undercover for the Treasury agents. Although all of the witnesses were subject to attack on cross-examination as a result of their own wrongdoing and the deals they had cut with the government, their testimony was still believable for the most part and more than adequate to deeply implicate Kirby.

### III.

*The Instruction Issue*

■ Over the objection of the defendant, the trial judge gave the jury the following instructions:

As stated before, the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or of producing any evidence. In particular, a defendant has a right not to testify, and you may not hold this against the defendant in any way.

In *Lakeside v. Oregon,* 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978), the Supreme Court had occasion to address this exact issue. The Court concluded that no error resulted from giving the instruction. In discussing this issue, the Court stated:

The petitioner's argument would require indulgence in two very doubtful assumptions: First, that the jurors have not noticed that the defendant did not testify and will not, therefore, draw adverse inferences on their own; second, that the jurors will totally disregard the instruction, and affirmatively give weight to what they have been told not to consider at all. Federal constitutional

law cannot rest on speculative assumptions so dubious as these.

... The very purpose of a jury charge is to flag the jurors' attention to concepts that must not be misunderstood, such as reasonable doubt and burden of proof. To instruct them in the meaning of the privilege against compulsory self-incrimination is not different.

*Id.* at 340, 98 S.Ct. at 1095 (footnotes omitted).

In discussing this same question, the Seventh Circuit concluded that "the instruction need not always be given regardless of the defendant's objection. The defendant must be given a say about it and the matter then left to the discretion of the trial judge...." *United States v. Lauchli*, 724 F.2d 1279, 1282–83 (7th Cir.) (citation omitted), *cert. denied*, 469 U.S. 1072, 105 S.Ct. 563, 83 L.Ed.2d 505 (1984).

The closest this court has come to dealing with this issue was in *United States v. Goble*, 512 F.2d 458 (6th Cir.), *cert. denied sub nom. Shad v. United States*, 423 U.S. 914, 96 S.Ct. 220, 46 L.Ed.2d 143 (1975). *Goble* involved multiple defendants, and although one or more of them wanted the instruction, Goble objected. The court gave the instruction over Goble's objection. Without discussion we held that "[t]he procedure employed by the District Judge was proper." *Id.* at 470.

Upon consideration, we conclude, as did the Seventh Circuit in *Lauchli*, that no *per se* rule is appropriate. The trial judge is not obligated to give the contested instruction over the defendant's objection, nor is the judge always required to refrain from giving the instruction when a defendant objects. Rather, the objection should be carefully considered and the ruling should be left to the sound discretion of the trial judge.

We find no abuse of discretion here in Judge Wiseman's decision to give the instruction.

AFFIRMED.