928 F.2d 407
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald J. KEAGLE, Defendant-Appellant.
 No. 89-2673.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 22, 1991.*
Decided March 15, 1991.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division, No. 88 CR 860, James H. Alesia, Judge.
 N.D.Ill.
 AFFIRMED.
 Before CUDAHY, EASTERBROOK, and RIPPLE, Circuit Judges.
 
 Order
 
 1
 On November 16, 1988, a grand jury indicted Ronald J. Keagle, Michael Johnson, and John Kelly on drug charges. Keagle was named in counts one and four, which charged conspiracy to possess 200 pounds of marijuana with intent to distribute, and attempt to possess marijuana with intent to distribute. A jury convicted Keagle on both counts, and the court sentenced him to concurrent terms of 63 months' imprisonment followed by five years of supervised release.
 
 
 2
 The charges grew out of undercover operations in which agents posed as sellers of drugs. That evidence, taken in the light most favorable to the prosecution, showed that Keagle, Johnson, and Kelly negotiated with agent Zopp and informant Spitzmiller for the purchase of 200 pounds of marijuana. Kelly and Johnson were the main negotiators; Keagle was the "money man". The purchase price was to be $140,000, with $70,000 paid on delivery and the rest within the next few days. All three defendants met with government agents and discussed the mechanics and terms of the deal. Keagle said that he could provide $25,000 and would get the rest from a source in Kentucky. The source in Kentucky did not come through. Eventually, Zopp and Spitzmiller agreed to accept as down payment the $25,000 and titles to vehicles owned by Keagle. When the cash and titles were produced, the defendants were arrested.
 
 
 3
 Keagle maintains that the prosecutor failed to introduce evidence demonstrating an agreement to violate the law. Keagle emphasizes the limited contact between himself and the government agents and argues that no agreement was reached because negotiations were ongoing at the time of the arrest. This argument is unavailing. The testimony and the transcripts of the taped conversations show that Keagle, Johnson, and Kelly agreed to work together to purchase 200 pounds of marijuana from Zopp and Spitzmiller. Keagle's argument that the evidence could support a contrary interpretation is irrelevant on appeal from a jury verdict.
 
 
 4
 Keagle also argues that the district court improperly instructed the jury. First, Keagle argues that the instructions failed to include all essential elements of the offense. The jury instructions, however, tracked the language of the statutory provisions under which Keagle was convicted. 21 U.S.C. Secs. 841(a)(1), 846. Those instructions clearly set forth the requirement that the jury find a conspiracy and defined the term conspiracy at some length. Keagle does not identify any specific defect in the language used to define conspiracy. Furthermore, under the terms of the statutes, the amount of marijuana is irrelevant. There is no need to obtain the jury's view on that subject.
 
 
 5
 Keagle next contends that the district court improperly refused to submit his theory-of-defense instruction. Johnson submitted this proposed instruction:
 
 
 6
 If you find that defendant Michael Johnson was an independent contractor who merely helped a willing seller locate a willing buyer that is insufficient to establish the existence of an agreement and you must find the defendant Michael Johnson not guilty of the conspiracy charge.
 
 
 7
 Johnson's attorney argued that the instruction should be given because Johnson's role was one of a broker. He argued that Johnson was getting only $16,000 and a car out of the deal and had no ties to the distribution of marijuana. The district court rejected this argument because no evidence supported that theory. Kelly's attorney then asked the court, for the record, if he was correct in assuming that a similar request would be denied, and the court stated that it was a correct assumption. Keagle's attorney then stated: "I suppose Keagle is 'out of the question'?", and the court again declared that it was a correct assumption.
 
 
 8
 We may assume that this is equivalent to the proffer of an instruction. The assumption does Keagle no good. No evidence supports the characterization of Keagle as an independent contractor merely bringing together a willing buyer and seller. As the "money man" in the deal, Keagle was the defendant who was most accurately characterized as the buyer. Nothing indicates that Keagle was to profit from any source other than the ultimate possession and distribution of the marijuana. Because the theory of defense embodied in Johnson's proposed instruction is without support regarding Keagle, the district court did not err in failing to give the instruction.
 
 
 9
 Keagle also appears to argue that the instructions given impermissibly directed the jury's attention to Keagle's failure to testify. Although listing a number of instructions, Keagle does not explain how any of them had that effect on the jury. The only instruction clearly related to Keagle's fifth amendment rights is the "no adverse inference" instruction. Lakeside v. Oregon, 435 U.S. 333 (1978), holds that giving such an instruction over objection does not violate the Constitution. Keagle did not object, and we need not consider whether it is wise for a federal court to override a defendant's wish to avoid calling the jury's attention to the subject.
 
 
 10
 Finally, Keagle claims that his sentence must be reversed because the trial judge improperly found that Keagle was an "organizer, leader, manager, and supervisor", warranting a two-level increase in his sentence. U.S.S.G. Sec. 3B1.1(c). The applicability of Sec. 3B1.1(c) to a particular defendant is a question of fact for the district court to resolve. United States v. Camargo, 908 F.2d 179, 185 (7th Cir.1990). The trial judge in this case found that Keagle played a supervisory role, remarking on the following factors: (1) Keagle determined the locale of meetings and declined to meet in certain areas because of fear of arrest; (2) Keagle said that he had contact with a person in Kentucky who could provide $45,000 to purchase drugs; (3) Keagle was the one who would redistribute the bulk of the marijuana and claim the larger share of the profits. Those findings are supported by the record and support the conclusion that Keagle was a supervisor of the conspiracy.
 
 
 11
 Keagle also appears to object to the court's use in sentencing of the 200 pounds of marijuana instead of some lesser amount. The testimony at trial, however, made it clear that the negotiations were for the entire 200 pounds, and the court did not err in using that amount.
 
 AFFIRMED
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a), Circuit Rule 34(f). No such statement has been filed, so the appeal is submitted for decision on the briefs and record