**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-10638

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

MYELICIA T. RODGERS,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:23-cr-00039-MCR-1

————————————

Before WILLIAM PRYOR, Chief Judge, and ABUDU, Circuit Judge, and CONWAY,[*] District Judge.

_____

[*] The Honorable Anne C. Conway, United States District Judge for the Middle District of Florida, sitting by designation.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether the district court drew an adverse inference from Myelicia Rodgers's refusal to testify at her trial. The district court found Rodgers, a former employee of the United States Postal Service, guilty of tampering with and stealing mail. During the bench trial, the district court informed Rodgers of her right not to testify. Rodgers decided against testifying and offered no witnesses. While explaining that the prosecution's evidence went "uncontradicted," the district court mentioned that Rodgers had not testified. Rodgers argues that the district court punished her for exercising that right. Because the district court did not consider Rodgers's silence against her, we affirm her conviction.

## I.  BACKGROUND

Myelicia Rodgers was a clerk at the United States post office in Crestview, Florida. She was often at the post office alone in early morning hours to sort packages and mail. After employees at her post office suspected that someone was tampering with the mail, members of the Office of Inspector General launched an investigation. They caught Rodgers tampering with mail multiple times.

In May 2023, a grand jury indicted Rodgers for one count of delay or destruction of United States mail, 18 U.S.C. § 1703(a), and one count of mail theft by a United States Postal Service employee, *id.* § 1709. Five months later, Rodgers waived her right to a jury in favor of a bench trial.

The prosecution called several witnesses to testify against Rodgers. The postmaster at the Crestview post office testified that he received several complaints of opened mail, which he reported to the United States Office of Inspector General. The prosecution's main witness, special agent George Beck from the Office of Inspector General, recounted that he investigated the complaints. He observed and recorded Rodgers taking greeting cards into the women's locker room. The prosecution offered multiple videos showing Rodgers acting suspiciously. For example, in one video, Rodgers took greeting cards outside of the building. In another, Rodgers opened a package and tried on a pair of shoes.

As part of his investigation, Beck dropped off several "test letters" containing cash and gifts cards at the office. Some never arrived at their addressed destination. Beck observed and recorded Rodgers opening one "test letter" and hiding it during early morning hours. That same morning, Beck observed Rodgers taking a cart of mail and packages, including two "test letters," to the building's dock toward the employee parking lot. Beck and another agent stopped Rodgers on the dock, where she immediately told them, "I shouldn't have done that." Beck then interviewed her in an open-door break room after informing her of her right to remain silent, *Garrity v. New Jersey*, 385 U.S. 493 (1967), and that everything she said could be used against her. Rodgers admitted she had opened some letters "just to see what people wrote to one another" but stated she never took their contents.

When the prosecution rested, Rodgers moved for a judgment of acquittal on the mail theft count, and the district court denied it. Rodgers's counsel, Juan Jose Rodriguez, asked to confer with Rodgers. While they were conferring, the district court informed Rodgers of her right not to testify:

> I need to make sure—I know, Mr. Rodriguez, you're having a conversation with Ms. Rodgers at counsel table, but I need to make sure that Ms. Rodgers understands that she does have the right to testify, if she'd like to. It's entirely her decision.
>
> Ms. Rodgers, you also have the right not to testify. If you don't, that's not something I'm going to consider in any way in deciding the ultimate issue in this case. But if you do want to testify, that's your decision, it's not Mr. Rodriguez's.
>
> He can certainly give you his professional advice about that, but, at the end of the day, it's your decision about whether or not to take the stand and testify.
>
> If you do elect to testify, then, obviously, you'd be subject to cross-examination on the witness stand. And the Court would consider your testimony as I do any other witness's testimony.
>
> So, go ahead, Mr. Rodriguez, and complete your discussion with her.

After speaking with Rodgers, defense counsel rested. The district court then replied, "Okay. And, Ms. Rodgers, let me just confirm:

That is your decision not to take the stand; is that correct?" She responded, "Yes, ma'am." The prosecution and Rodgers's counsel proceeded to closing arguments.

During his closing argument, Rodgers's counsel challenged the voluntariness of Beck's interview of Rodgers by arguing that Beck "coach[ed] Ms. Rodgers into what should be said." He also faulted Beck for not recording the interview, to which the district court responded that the failure to record did not compel a finding that the interview was coercive:

> Well, the fact that the interview was not recorded does not mean that the interview didn't take place, Mr. Rodriguez, it just doesn't. It's a factor that I'll take into consideration, but it certainly doesn't mean it didn't take place, and it certainly doesn't mean it was coercive.

> Your client did not testify as a witness, and so the only evidence that I have as to the circumstances of that interview come[s] from Agent Beck.

Rodgers's counsel responded by "respectfully request[ing] that the Court . . . not take her silence as [an] admission of guilt in any way, shape, or form." The district court reassured him it would not do so:

> I didn't say that. I just said I can only—your argument to me is not evidence. So the evidence is what the evidence is that came into the record. And so I'm just pointing out that I don't have another side of that story. I have [Agent Beck's]. His side will have to be

6                              Opinion of the Court                    24-10638

enough to convince me that your argument doesn't carry enough weight to convince me otherwise.

In other words, if I accept your argument, then I suppose I would find that it was coercive. But I also have to have facts to tell me that it was coerce[d]. I have to be able to base my decision on the evidence, not just your argument.

The district court found Rodgers guilty of both counts. And in its written verdict, the district court described Rodgers's motion for a judgment of acquittal, decision not to present any evidence, and closing argument:

After the Government's presentation of evidence, Rodgers moved for a judgment of acquittal on the charge of embezzlement, *see* Fed. R. Crim. P. 29, which the Court denied for reasons stated in open court. Rodgers then rested her case, having presented no witnesses and only one exhibit, consisting of the acknowledgement of rights form on which Special Agent Beck had made a handwritten notation that Rodgers refused to sign the form but had acknowledged that she understood her rights. . . . Defense counsel argued in closing that Rodgers's oral and written statements during the interview with the Special Agents on August 30, 2022, were not voluntary.

It then sentenced her to six months' probation and ordered her to pay $45.68 in restitution.

## II. STANDARD OF REVIEW

The parties disagree about the standard of review. Rodgers asks us to review *de novo* whether her constitutional right to silence was violated. The government argues that we should review for plain error. Because the result is the same under either standard, we review *de novo*. *See United States v. Lightsey*, 120 F.4th 851, 858 (11th Cir. 2024).

## III. DISCUSSION

Rodgers asks us to vacate her conviction because the district court "made clear" that her choice not to testify "was being considered . . . and held against [her]." She also argues that because the district court was the trier of fact, "there can be no claim of harmless error." We disagree.

"A criminal defendant has a fundamental constitutional right to choose whether to testify in his own defense." *United States v. Anderson*, 1 F.4th 1244, 1253 (11th Cir. 2021). So, "in a criminal case[,] . . . no negative inference from the defendant's failure to testify is permitted." *Mitchell v. United States*, 526 U.S. 314, 328 (1999). During jury trials, the Fifth Amendment right to not testify "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v. California*, 380 U.S. 609, 615 (1965). The rule against making a negative inference also applies when a judge sits as factfinder. *Cf. Mitchell*, 526 U.S. at 329 (holding that district courts may not draw "an adverse factual inference . . . from silence at a sentencing hear-

ing"). Yet the rule does not forbid all "direct reference[s] to a defendant's failure to testify." *United States v. Thompson*, 422 F.3d 1285, 1298 (11th Cir. 2005) (citation and internal quotation marks omitted). For example, a judge may instruct the jury that it "must draw *no* adverse inferences of any kind from the defendant's exercise of his privilege not to testify." *Lakeside v. Oregon*, 435 U.S. 333, 339 (1978).

The district court did not draw a negative inference from Rodgers's decision not to testify. The district court instead assured Rodgers before she decided not to testify that it would not "consider" her decision "in any way in deciding the ultimate issue"—guilt. The district court also performed what we have described as a "pruden[t]" practice: an "on-the-record" "brief and neutral inquiry" into whether Rodgers "wishe[d] to testify or to remain silent." *Anderson*, 1 F.4th at 1253, 1257. That practice was prudent because Rodgers's "right to choose whether to testify" was her "personal right . . . that could not be waived by [her] defense counsel." *Id*. at 1253 (citation and internal quotation marks omitted). And the later reference to her silence by the district court was innocuous. Rodgers's counsel attempted to discredit Beck's account of the interview because Beck did not record it. And the district court responded that the "only evidence" it had of "the circumstances of that interview c[a]me from Agent Beck" after Rodgers "did not testify as a witness." Because Rodgers's counsel's statement was "argument . . . not evidence," the district court "[did not] have another side of [the] story."

The district court never implied that Rodgers's silence was evidence of her guilt. And it assured Rodgers *again* that it would not consider her silence as evidence of guilt. The written verdict accurately recounted that Rodgers "presented no witnesses and only one exhibit," which meant the prosecution's "trial testimony [was] uncontradicted by any evidence." So the verdict only referenced Rodgers's silence to explain that she did not present any witnesses. And that fact meant only that the prosecution's case went "uncontradicted"—not that Rodgers was guilty.

We do not treat this issue any differently because it involves a bench trial. Instead, "[w]e take the district court at its word." *United States v. Schwarzbaum*, 24 F.4th 1355, 1364 (11th Cir. 2022). The Supreme Court has said that it is "routine for [trial courts] to instruct juries that no adverse inference may be drawn from a defendant's failure to testify; surely we must presume that they follow their own instructions when they are acting as factfinders." *Harris v. Rivera*, 454 U.S. 339, 346 (1981); *cf. Sowers v. R.J. Reynolds Tobacco Co.*, 975 F.3d 1112, 1138 (11th Cir. 2020) (noting that it is "rock solid law" that "we must . . . presume that juries follow their instructions" (citation and internal quotation marks omitted)). The district court made clear that it understood and respected that Rodgers's silence did not imply her guilt.

## IV. CONCLUSION

We **AFFIRM** Rodgers's conviction.