**Steve L. HUNTER, Petitioner,**

v.

**Jack R. DUCKWORTH; and Indiana Attorney General, Respondents.**

**Civ. No. S 88–637.**

United States District Court, N.D. Indiana, South Bend Division.

June 29, 1989.

** Editor's Note: These changes have been incorporated into the Order.

Monica Foster, Indianapolis, Ind., for petitioner.

Kirk A. Knoll, Deputy Atty. Gen., Indianapolis, Ind., for respondents.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

On October 26, 1988, the petitioner, Steve L. Hunter, by counsel, filed a petition seeking habeas corpus relief under 28 U.S.C. § 2254. The return was filed by the respondents on February 21, 1989, and, at the same time, the entire state court record was filed in accordance with the mandates of *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

### I.

### *Background*

The petitioner was convicted by a jury of five counts of robbery and one count of confinement in the Marion Superior Court, Criminal Division, in Indianapolis, Indiana. The state trial court sentenced the petitioner to twenty years for each count, all sentences to run consecutively. The convictions were unanimously affirmed by the Supreme Court of Indiana in *Hunter v. State*, 492 N.E.2d 1067 (Ind.1986), in an opinion authored by Justice Pivarnik..

At his trial, the state's evidence showed that on January 24, 1984, the petitioner and two cohorts, Charles Hatcher and Linnell Beard, robbed a bank, took the assistant manager hostage, and stole at least two vehicles while fleeing the bank. *Id.* at 1068.

In his habeas petition, the petitioner raises a single issue which has been fully exhausted. He argues that his Fifth Amendment rights were violated when the state trial court refused to give his tendered "failure to testify" instruction.

## II.

### Discussion
### A.  Waiver

At the outset, the respondents contend that this court is without jurisdiction to address the merits of the petitioner's constitutional claim. First, they argue that the Supreme Court of Indiana found that the petitioner waived the constitutional claim at trial. Consequently, the judgment of the Supreme Court of Indiana rests on an adequate and independent state procedural ground and therefore should not be reviewed by this court. Secondly, they maintain that the petitioner did not specify the grounds for his objection at trial and therefore waived the error.

In finding that the petitioner waived his constitutional claim at trial, the Supreme Court of Indiana reasoned:

> Appellant Hunter was tried together with his co-defendant, Charles Hatcher. Although Hatcher moved to sever their trials, Hunter did not, and, in fact, declined an offer by the court to do so.
>
> Hunter requested the giving of his Tendered Instruction No. 1, which was an instruction to the jury that no adverse inference be drawn by his election not to testify. Hatcher objected to the giving of such an instruction. The trial court then asked Hunter if he wanted severance of his jury trial but he responded through his counsel: "We're just requesting that instruction to be given. And we would like our objection noted as not being given at this point." The trial court did not give a "no adverse inference" instruction to the jury. Hunter now claims the trial court erred by failing to give the instruction upon his request.

The United States Supreme Court in *Lakeside v. Oregon* (1978), 435 U.S. 333, 340–341, 98 S.Ct. 1091, 1095, 55 L.Ed.2d 319, 326, held that the giving of such a cautionary instruction over a defendant's objection does not violate the United States Constitution's Fifth and Fourteenth Amendment privilege against compulsory self-incrimination. It further held that each State is free to forbid its trial judges from doing so as a matter of state law, but remarked it would be wise for a judge *not to give such a remark* over objection. This Court has held that any defendant is entitled to make the determination for himself whether or not the instruction should be given, and therefore, the objection to the giving of a no adverse inference instruction must preclude its being given. *See Gross v. State* (1974), 261 Ind. 489, 306 N.E.2d 371. We have also held that if a request is made *for* the giving of this instruction, the trial court should give it and failure to do so will result in reversal unless the State shows that the error was harmless beyond a reasonable doubt. *Parker v. State* (1981), Ind., 425 N.E.2d 628, 630; *Priest v. State* (1979), 270 Ind. 449, 454, 386 N.E.2d 686, 689 (Givan, C.J., and Pivarnik, J., concurring in result); *Hill v. State* (1978), 267 Ind. 480, 371 N.E.2d 1303 (Givan, C.J., and Pivarnik, J., dissenting); *Gross*, 261 Ind. at 491, 306 N.E.2d at 372.

> By his actions here, Hunter placed the trial court on the horns of a dilemma which made it impossible for it to refrain from committing error. The trial court gave Hunter the opportunity to resolve this dilemma by offering to sever the trials as Hatcher had, in fact, requested, but Hunter declined to accept that alternative. He therefore has waived any error the court might have committed in resolving the matter as he did.

*Hunter,* 492 N.E.2d at 1068–69 (emphasis in original).

The court is mindful of principles of federalism and comity. It is fundamental that the court cannot grant the petitioner habeas corpus relief on a federal claim if the judgment of the Supreme Court of Indiana is based on an adequate and independent state procedural ground. *Wainwright v.*

*Sykes,* 433 U.S. 72, 86–87, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977). This rule, however, is subject to exceptions.

██ In order for a state court judgment to rest on an adequate and independent state procedural ground, the procedure must be firmly established and regularly followed. *Johnson v. Mississippi,* 486 U.S. 578, 108 S.Ct. 1981, 1987, 100 L.Ed.2d 575 (1988); *accord James v. Kentucky,* 466 U.S. 341, 348, 104 S.Ct. 1830, 1835, 80 L.Ed.2d 346 (1984). It appears that the procedural rule relied upon by the Supreme Court of Indiana to default the petitioner's constitutional claim was created in *his* case. This court cannot find an Indiana court rule or statute which requires a defendant to move for a severance or to accept an offer of severance in order to preserve the "failure to testify" issue. In fact, in *Lucas v. State,* 499 N.E.2d 1090 (Ind.1986), the Supreme Court of Indiana addressed this same issue and did not mention such a procedural requirement. In *Lucas,* the Supreme Court of Indiana affirmed the giving of a requested "failure to testify" instruction over the objections of a co-defendant. *Id.* at 1093. The state court reasoned:

> Larry's Fifth Amendment right to an instruction warning the jury not to draw any adverse inferences from his silence must prevail over the right that this Court has granted under the Indiana Constitution to decide whether it suits him to have such an instruction given or not. Thus, the trial court correctly overruled Paul's objection to Larry's tendered instruction.

*Id.*

The court concludes that the procedural bar relied upon by the Supreme Court of Indiana in this case has not been consistently or regularly applied. It appears, instead, that the state court has created a new procedural default rule. *See Wright v. Georgia,* 373 U.S. 284, 291, 83 S.Ct. 1240, 1245, 10 L.Ed.2d 349 (1963). Consequently, under federal habeas law, the procedural bar is not an adequate and independent state ground for affirming the petitioner's conviction.

██ The respondents also contend that the petitioner did not specify the grounds for his objection to the state trial court's refusal to give the "failure to testify" instruction. This waiver theory is fraught with problems. First, the respondents rely on a federal contemporaneous objection rule. Although Indiana courts may follow the principles embodied in the federal rule, the respondents have failed to cite an Indiana court rule or statute following such principles. Secondly, it is reasonably clear from the record the basis of the petitioner's objection to the state trial court's refusal to give the "failure to testify" instruction. But most importantly, "[t]he mere existence of a basis for a state procedural bar does not deprive this Court of jurisdiction; the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi,* 472 U.S. 320, 327, 105 S.Ct. 2633, 2638, 86 L.Ed.2d 231 (1985) (citing *Ulster County Court v. Allen,* 442 U.S. 140, 152–54, 99 S.Ct. 2213, 2222–23, 60 L.Ed.2d 777 (1979)). *See also Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989). The Supreme Court of Indiana in this case did not rely upon a procedural bar premised upon the petitioner's failure to specify the grounds for his objection. Consequently, even assuming the petitioner did not adequately specify the grounds for his objection, this procedural bar does not preclude this court from entertaining the merits of his constitutional claim.

### B. Fifth Amendment

██ The Supreme Court of the United States in *Carter v. Kentucky,* 450 U.S. 288, 305, 101 S.Ct. 1112, 1121, 67 L.Ed.2d 241 (1981), held that a defendant has a constitutional right to request a "failure to testify" instruction under the Fifth Amendment of the Constitution of the United States as made applicable to the states by the Fourteenth Amendment. At his trial, the petitioner did not testify in his own defense. He requested that the jury be preliminarily instructed not to draw any adverse inferences from his decision not to testify. Tr.

Rec. at 164. The petitioner's co-defendant, Charles Hatcher, objected to this instruction. The state trial court then offered to sever the trial in order to accommodate the opposing requests of the petitioner and Hatcher.[1] The petitioner declined the state trial court's offer to sever the trial. The state trial court then took the issue regarding the giving of the instruction under advisement. The state trial court eventually decided not to give the "failure to testify" instruction in the final instructions.

The state trial court, in the words of Justice Pivarnik, was placed on the "horns of a dilemma," see *Hunter*, 492 N.E.2d at 1069. For in Indiana, co-defendant Hatcher has a state constitutional right to prohibit the giving of a "failure to testify" instruction. *Priest v. State*, 270 Ind. 449, 386 N.E.2d 686, 689 (Ind.1979); *accord Gross v. State*, 261 Ind. 489, 306 N.E.2d 371, 372–73 (1974). Under federal law, however, the giving of such an instruction does not violate the Fifth Amendment rights of co-defendant Hatcher. *Lakeside v. Oregon*, 435 U.S. 333, 340–41, 98 S.Ct. 1091, 1095–96, 55 L.Ed.2d 319 (1978). As a result, if the state trial court gave the instruction, Hatcher's state constitutional rights would be violated. On the other hand, if the state trial court did not give the instruction, the petitioner's federal constitutional rights would be violated.

Certainly, the state trial court in this case was placed in an untenable position. The state prosecuting authority had determined to charge and try the petitioner together with Charles Hatcher. The state trial court had no control over how the state prosecutor had chosen to prosecute the two defendants. When the issue arose regarding the "failure to testify" instruction, the state trial court offered to sever the trial. The offer was rejected by the petitioner. Notwithstanding this court's empathy for the dilemma of the state trial court, this court must determine on the basis of the record before it whether the

Constitution of the United States was violated.

■ When a state constitutional right unavoidably conflicts with a federal constitutional right, the state right must give way to the federal right under the mandates of the Supremacy Clause of the Constitution of the United States. *See, e.g., Reynolds v. Sims*, 377 U.S. 533, 584, 84 S.Ct. 1362, 1393, 12 L.Ed.2d 506 (1964). Consequently, in this joint state trial, the petitioner's Fifth Amendment right to request a "failure to testify" instruction should have prevailed over co-defendant Hatcher's state constitutional right not to have the instruction given. *See Lucas*, 499 N.E.2d at 1093 (where the Supreme Court of Indiana held the same). Thus, the petitioner's Fifth Amendment rights were violated when the state trial court refused to give his tendered "failure to testify" instruction.

### C. Harmless Error

■ The petitioner and the respondents disagree as to whether the error committed by the state trial court in this case can be subject to harmless error analysis. Although the Seventh Circuit has not addressed this precise issue, the Fifth Circuit in *Richardson v. Lucas*, 741 F.2d 753, 755 (5th Cir.1984), held that refusal to give a requested "failure to testify" instruction can be harmless error. The Fifth Circuit analogized this type of error to a prosecutorial comment on a defendant's failure to testify. The court rationalized:

> *Chapman* [*v. California*] teaches us that prosecutorial comment on a defendant's failure to testify can be harmless error. 386 U.S. at 23, 87 S.Ct. at 827–28. A similar result is appropriate when a judge erroneously refuses to instruct the jury, following a proper request, not to draw an unfavorable inference from a defendant's refusal to testify. The two types of error both implicate the fifth

---

1. There appears to be a factual dispute with regard to whether the state trial court actually offered a severance to the petitioner. An examination of the record indicates that there is a factual basis in the record for the conclusion of

the Supreme Court of Indiana that a severance was offered and declined. This finding by the highest court in Indiana, therefore, is not clearly erroneous and is supported under the mandates of 28 U.S.C. § 2254(d)(8).

amendment's privilege against self-incrimination. Furthermore, the *Chapman* error is the more egregious. There, the prosecution openly informs the jury of the defendant's failure to testify and of the inferences of guilt which can be drawn therefrom. After reading *Chapman* and considering the two types of error involved, we can perceive no reason for distinguishing the two types insofar as the application of the harmless error doctrine is concerned. *Id.* Finding the reasoning persuasive in *Richardson,* the court finds that the refusal to give a requested "failure to testify" instruction can be harmless error.

It is axiomatic that constitutional errors in a criminal trial are grounds for reversal unless they are "harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). The petitioner is entitled to a fair trial not a perfect one. *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986). *See also Sulie v. Duckworth,* 864 F.2d 1348, 1356 (7th Cir.1988); *Ortega v. O'Leary,* 843 F.2d 258, 262 (7th Cir.1988), *cert. denied,* 488 U.S. 841, 109 S.Ct. 110, 102 L.Ed.2d 85 (1988). The harmless error rule "promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error." *Van Arsdall,* 475 U.S. at 681, 106 S.Ct. at 1436. *See also United States ex rel. Thomas v. O'Leary,* 856 F.2d 1011, 1017 (7th Cir. 1988).

The initial inquiry for the court then "is whether absent the constitutionally-forbidden evidence, honest and fair-minded jurors might very well have brought in not-guilty verdicts." *Burns v. Clusen,* 798 F.2d 931, 943 (7th Cir.1986) (citing *Chapman v. California,* 386 U.S. 18, 26, 87 S.Ct. 824, 829, 17 L.Ed.2d 705 (1967)). The court must determine " 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' " *United States ex rel. Ross v. Fike,* 534 F.2d 731, 734 (7th Cir.1976) (quoting *Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963)). This cir-

cuit generally requires other evidence of guilt to be "overwhelming" before concluding a constitutional error was harmless. *See Sulie,* 864 F.2d at 1359; *Smith v. Fairman,* 862 F.2d 630, 639 (7th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1645, 104 L.Ed.2d 160 (1989); *United States ex rel. Savory v. Lane,* 832 F.2d 1011, 1020 (7th Cir.1987); *Burns,* 798 F.2d at 943; *United States v. Shue,* 766 F.2d 1122, 1133 (7th Cir.1985). But in making this determination the court is not to engage in a reweighing of the evidence to determine the impact on the jury's verdict. *Fencl v. Abrahamson,* 841 F.2d 760, 769 (7th Cir. 1988). Rather, the court must examine all the evidence to determine the impact of the objectionable evidence on the jury's verdict. *Id.*

Based upon an examination of the state court record in this case, the evidence supporting the petitioner's convictions is not "overwhelming." *See Sulie,* 864 F.2d at 1359. Phyllis Jones, a bank employee, positively identified the petitioner at trial as one of the three robbers in the bank. Her testimony, however, is not corroborated by any other witnesses. In fact, none of the victims of the crimes (five in all) could positively identify the petitioner at trial. Moreover, there is no hard physical evidence which supports the charges.

The state's case against the petitioner primarily rests upon the testimony of two friends of the petitioner—Howard Smith and Anthony Thompson. Both Smith and Thompson testified about inculpatory statements made to them by the petitioner regarding the crimes. They both testified for the state in exchange for a grant of immunity. They were not present during the commission of the crimes but they were accessories after the fact.

Smith testified that on January 24, 1984, he received a portion of the stolen money for providing the weapons used in the bank robbery. He also testified that the petitioner and his two cohorts, Charles Hatcher and Linnell Beard, came to his, Smith's, apartment after the commission of the

crimes and dumped the stolen money on a table.

Thompson, a cousin of the petitioner, testified that on January 24, 1984, he met the petitioner, Hatcher and Beard at the petitioner's apartment after the three had left Smith's apartment. At the petitioner's apartment, they discussed the crimes and Thompson then asked for some of the stolen money. The petitioner informed Thompson that Smith had a portion of the stolen money. Thompson then went to Smith's apartment where he helped Smith wash red dye off the stolen money. The money was covered with red dye from an exploding dye bomb which was activated when the money was removed from the bank. Smith then gave a portion of the money to Thompson. Later that day, Hatcher gave Thompson another portion of the stolen money.

In *Dudley v. Duckworth*, 854 F.2d 967 (7th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 1655, 104 L.Ed.2d 169 (1989), the Seventh Circuit held that the state trial court committed constitutional error when it allowed a state's witness to testify to receiving anonymous phone threats the night before the trial. *Id.* at 972. In applying harmless error analysis, the Seventh Circuit concluded that the evidence of guilt against McKinley Dudley was not overwhelming because the state's case primarily rested upon the testimony of two accomplices testifying in exchange for dismissal of charges and immunity. *Id.* The court found the accomplice testimony to be "inherently dubious" and thereby insufficient to render the constitutional error committed in that case harmless. *Id.* The court stated that "[t]he evidence of [Dudley's] guilt was impressive but not overwhelming." *Id.* (citing *United States ex rel. Savory v. Lane,* 832 F.2d 1011, 1020 (7th Cir.1987)).

Likewise, the state's case against the petitioner primarily rests upon two accomplices testifying in exchange for a grant of immunity. There are two distinctions between the accomplice testimony in this case and the accomplice testimony in *Dudley*. First, the testimony of Howard Smith and Anthony Thompson is partly corroborated by Phyllis Jones who identified the petitioner as one of the bank robbers in the bank. Consequently, the testimony of Smith and Thompson is less "dubious" than the unsubstantiated accomplice testimony in *Dudley*. Secondly, the testimony of Smith and Thompson primarily is based on hearsay accounts of the crimes as told to them by the alleged participants, which included the petitioner. The accomplice testimony in *Dudley,* however, primarily is based on eyewitness accounts of the crime. In *Dudley,* the two accomplices who testified for the state were present during the commission of the crime charged against McKinley Dudley. Thus, on the one hand, the accomplice testimony in this case is more reliable than the accomplice testimony in *Dudley* because it is partly corroborated by a neutral witness. On the other hand, the accomplice testimony in this case is less reliable than in *Dudley* because it is based on hearsay accounts of the crimes and not eyewitness testimony.

. Based on the foregoing considerations, the court finds that there does not exist "substantial direct evidence" against the petitioner. *See Dortch v. O'Leary,* 863 F.2d 1337, 1345 (7th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 1961, 104 L.Ed.2d 429 (1989). Although Howard Smith and Anthony Thompson did observe physical evidence of the crimes such as the stolen money, their testimony primarily relies upon hearsay accounts of the crimes. Such hearsay included inculpatory statements made to them by this petitioner. At his trial, the petitioner could have contradicted the testimony of Smith and Thompson regarding the inculpatory statements he, the petitioner, made to them. The petitioner decided not to testify, however. As a result, there is a "reasonable possibility" that the jury may have considered the petitioner's failure to testify as a tacit admission to the truthfulness of the inculpatory statements that he made to Smith and Thompson. *See Fahy,* 375 U.S. at 86, 84 S.Ct. at 230. The giving of the requested "failure to testify" instruction may have minimized the danger that the jury would give evidentiary weight to the petitioner's failure to

testify. *See Carter*, 450 U.S. at 305, 101 S.Ct. at 1121. Consequently, the state trial court's error in refusing to give the requested "failure to testify" instruction is not harmless beyond a reasonable doubt.

## III.

### *Conclusion*

The petitioner did not procedurally default his constitutional claim. Addressing the claim on the merits, the court concludes that the petitioner's Fifth Amendment rights were violated when the state trial court refused, upon proper request, to give a "failure to testify" instruction. The court further finds that this constitutional error is not harmless beyond a reasonable doubt. In the words of Judge Wood, speaking for the Seventh Circuit in *Dudley*, "[t]he petitioner deserves the writ, but he also deserves to be retried." 854 F.2d at 972. Accordingly, the petition for a writ of habeas corpus is hereby GRANTED provided the State of Indiana does not retry the petitioner within 120 days from the date of this order. SO ORDERED.