## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
## AUGUST SESSION, 1997

FILED

October 24, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | No. 02C01-9703-CC-00126 |
| Appellee | ) | |
| | ) | MADISON COUNTY |
| vs. | ) | |
| | ) | Hon. FRANKLIN MURCHISON, Judge |
| MELVIN EDWARD HENNING, | ) | |
| | ) | (Attempted First Degree Murder; |
| Appellant | ) | Attempted Second Degree Murder; |
| | | Aggravated Assault - 2 counts; |
| | | Possession of a deadly weapon |
| | | during commission of a felony) |

For the Appellant:

**C. MICHAEL ROBBINS**
202 S. Maple, Suite C
Covington, TN 38019

ON APPEAL

**GEORGE MORTON GOOGE**
District Public Defender
227 W. Baltimore Street
Jackson, TN 38301

AT TRIAL

For the Appellee:

**JOHN KNOX WALKUP**
Attorney General and Reporter

**ELIZABETH T. RYAN**
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

**JAMES G. (JERRY) WOODALL**
District Attorney General

**DONALD H. ALLEN**
Asst. District Attorney General
P. O. Box 2825
Jackson, TN 38302

OPINION FILED: _____

AFFIRMED IN PART; MODIFIED AND REMANDED IN PART; REVERSED AND
VACATED IN PART

**David G. Hayes**
Judge

# OPINION

The appellant, Melvin Edward Henning, appeals his Madison County jury convictions for the crimes of attempted first degree murder, attempted second degree murder, two counts of aggravated assault, and possession of a deadly weapon during the commission of a felony.[1]  Following the sentencing hearing, the trial court sentenced the appellant, as a range I offender, to twenty-four years for attempted first degree murder and to eleven years for attempted second degree murder; and, as a range II offender, to nine years for each aggravated assault conviction and to three years for the weapons conviction.  The trial court further ordered that the two attempted homicide convictions run consecutively to each other but concurrent with all remaining sentences, for a total effective sentence of thirty-five years in the Tennessee Department of Correction.  On appeal, the appellant raises the following issues:

> I.  Whether the evidence is sufficient to support the appellant's two attempted homicide convictions;
>
> II.  Whether the appellant's convictions for aggravated assault violate constitutional protections provided by State v. Anthony, 817 S.W.2d 299 (Tenn. 1991).
>
> III.  Whether the trial court properly charged the jury on reasonable doubt;
>
> IV.  Whether the trial court failed to apply applicable mitigating factors in determining the length of the appellant's sentences; and
>
> V.  Whether the trial court properly ordered the appellant's attempted homicide convictions to run consecutively.

After a thorough review of the record before us, we affirm the appellant's conviction for attempted second degree murder.  However, we find the evidence insufficient to support the conviction for attempted first degree murder, and, accordingly, modify the judgment to reflect a conviction for attempted second

---

[1]The appellant was also convicted of resisting arrest, a class A misdemeanor.  This conviction was not appealed.

degree murder and remand to the trial court for resentencing. Moreover, we conclude, as conceded by the State in part, that the appellant's two convictions for aggravated assault violate principles of double jeopardy and, therefore, must be vacated and dismissed.

## Background

On February 18, 1995, the appellant, accompanied by his cousin, Michael Smith, drove to the residence of Adel Washington, located at 236 Circle Drive, Jackson. Smith had agreed to accompany the appellant, believing that they were going to visit the appellant's sick mother.[2] Immediately prior to arriving at the Washington residence, the appellant made a stop at the residence of Ann Smith and inquired as to the whereabouts of the Washington children. Learning that they were with Ms. Smith, the appellant replied, "that's all I need to know" and proceeded to the Washington residence.[3] After arriving at the Circle Drive address, the appellant got out of his car and walked to the front door. At this point, the appellant was unaware that Ms. Washington was not at home and that the only occupant was her live-in-boyfriend, Keith Fason, who was unknown to the appellant. The appellant pounded on the door and demanded that the door be opened. Upon receiving no reply, the appellant fired two shots at the door. At this point, Smith asked the appellant what was going on and the appellant

---

[2]Michael Smith testified that, earlier that day, the appellant had told him "that some girl had sent him to jail and 'I am going to get the bitch.'" Smith said, although he was not certain, he believed the girl to be someone named "Ardel" or "Adel."

[3]The proof at trial established that earlier in the month, Ms. Washington, who was acquainted with the appellant, had refused to sell the appellant and a female companion "dope." Following Ms. Washington's refusal to sell drugs, a heated argument ensued. The appellant produced what appeared to be a pistol and stated that he would be back. Shortly thereafter, Ms. Washington filed a complaint with the police, resulting in the appellant's arrest. On February 17, the appellant, upon leaving a night club in Jackson, discovered that his car had been vandalized. The appellant believed the person responsible was Ms. Washington.

turned and shot his cousin in the chest. Hearing the gunshots, Fason ran to a window on the other end of the house where he observed the appellant assisting the wounded Smith back to the passenger side of the car. Fason, while watching the appellant though the window, called the police to report the shooting. As Fason watched the appellant from the window, he observed the appellant look into the window where Fason was standing, raise his arm and fire one shot. The bullet passed through the window and struck a glass jar. Fason's arm was cut by a piece of the shattered glass.

The appellant returned to his car and left the scene. In the car, the appellant informed his wounded cousin that "I ain't taking you to the doctor." He proceeded to drive around until he saw Donald Morrow on East Chester Street. He stopped the car, threw the bleeding and semi-conscious Smith out of the car onto the street, and instructed Morrow to "Take [Smith] [expletive deleted] to the hospital before he dies."

Jackson Police Officer Monty Belew was dispatched to the Jackson Madison County General Hospital at 5:38 p.m., because a gunshot victim was found in the parking lot. At the hospital, Belew learned that the victim was Michael Smith. Smith, while being prepared for surgery, stated that he had been shot by the appellant and provided descriptions of both the appellant and his vehicle.

Law enforcement officers located the appellant at his mother's home at 125 Otis Street. Officer Kathy Dent repeatedly instructed the appellant to "put his hands up" and "get on his knees." The appellant ignored the instructions and exclaimed "I have a gun in my pocket." A struggle ensued. After subduing the appellant, the officers recovered a loaded.380 handgun on the appellant's person.

4

Based upon this evidence, the jury returned a verdict finding the appellant guilty of the attempted first degree murder of Keith Fason, aggravated assault of Keith Fason, the attempted second degree murder of Michael Smith, aggravated assault of Michael Smith, possession of a deadly weapon during the commission of a felony, and resisting arrest.

## I.  Sufficiency of the Evidence

The appellant contends that the evidence is insufficient for a rational trier of fact to find him guilty, beyond a reasonable doubt, of both attempted first degree murder and attempted second degree murder.  Once a jury returns a guilty verdict, the presumption of innocence, with which a defendant is initially cloaked, is removed and is replaced with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient.  State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).  In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence which is reviewed in the light most favorable to the State.  State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).  Moreover, the credibility of witnesses, the weight given to testimony, and the reconciliation of conflicts in the testimony are all matters entrusted exclusively to the jury as the triers of fact, whose determination this court will not disturb on appeal.  State v. Oody, 823 S.W.2d 554, 558 (Tenn. Crim. App. 1991). It is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of

fact to have found the essential elements of the offenses beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789 (1979); State

v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); Tenn. R. App. P. 13(e).

## A. ATTEMPTED FIRST DEGREE MURDER

First, the appellant contends that he did not have the culpable mental state necessary to support the offense of attempted first degree murder. In support of this claim, the appellant argues that, not only did he lack the necessary intent to kill Keith Fason, but also that he was unaware that the house was occupied at the time of the shooting. In order to convict the appellant of attempted first degree murder in this case, the State was required to prove that the appellant, acting with the kind of culpability otherwise required for the offense:

> (2) Act[ed] with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part;

Tenn. Code Ann. § 39-12-101(a) (1991); and that the result intended was the (1) intentional, premeditated and deliberate killing of another. Tenn. Code Ann. § 39-13-202(a)(1) (1994 Supp.).

In the light most favorable to the State, the evidence shows that the appellant intentionally fired his weapon at Washington's house. The frightened Fason ran to another room where he telephoned for help, during which time he observed the appellant assist his wounded companion to the car. While watching the appellant return to the driver's side of his vehicle, Fason noticed the appellant peering through the window, behind which Fason was standing. Fason testified that the appellant was able to see him standing in the window. Rather than return to his vehicle, the appellant made the conscious decision to aim his weapon and then fire his weapon into this window.

The State bears the burden of proving, beyond a reasonable doubt, the separate and distinct elements of premeditation and deliberation. See Tenn.

6

Code Ann. § 39-11-201(1) (1991). As proof of premeditation and deliberation, the State argues that the appellant made eye contact with Fason, who was standing in the window, and rather than leaving the scene, consciously made a decision to raise his arm and fire into the window. Premeditation necessitates "the exercise of reflection and judgment," Tenn. Code Ann. § 39-13-201(b)(2) (1991), "includ[ing] instances of homicide committed by poison or lying in wait," and "requiring "a previously formed design or intent to kill." State v. West, 844 S.W.2d 144, 147 (Tenn. 1992). Deliberation, on the other hand, is defined as a "cool purpose . . . formed in the absence of passion." State v. Brown, 836 S.W.2d 530, 538 (Tenn. 1992) (citations and internal quotations omitted). Deliberation also requires "some period of reflection, during which the mind is free from the influence of excitement." Id.; see also Tenn. Code Ann. § 39-13-201(b)(2).

Although there are no strict standards governing what constitutes proof of premeditation and deliberation, several relevant circumstances are helpful in the inquiry, including: the use of a deadly weapon upon an unarmed victim; the fact that the killing was particularly cruel; declarations by the defendant of his intent to kill; and the making of preparations before the killing for the purpose of concealing the crime. State v. Bland, No. 02C01-9412-CR-00281 (Tenn. Crim. App. at Jackson, Mar. 27, 1996), reh'g denied, (Tenn. Crim. App. May 1, 1996) (citing Brown, 836 S.W.2d at 541-42). Additional factors from which the jury may infer premeditation and deliberation include planning activities by the appellant prior to the killing, the appellant's prior relationship with the victim, and the nature of the killing. Id. (citing State v. Bordis, 905 S.W.2d 214 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1995) (quoting 2 W. LaFave and A. Scott, Jr., Substantive Criminal Law Sec. 7.7 (1986))); Gentry, 881 S.W.2d at 4-5 (citation omitted)). Other than the appellant's use of a deadly weapon, we find none of the above circumstances present in the instant case.

7

We are unable to conclude from the proof in the record that the appellant's firing of his weapon into the window was premeditated, i.e. as the result of "the exercise of reflection and judgment with a previously formed design or intent to kill." In fact, Keith Fason confirmed the appellant's assertion that he and Fason had never previously met nor had the two men had any prior encounters or dealings. Notwithstanding our finding that the proof is insufficient to establish the attempted <u>first</u> degree murder of Keith Fason, we acknowledge that, once a homicide is established, it is presumed to be a second degree murder. <u>Brown</u>, 836 S.W.2d at 543. Second degree murder is "a knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1)(1991). Clearly, under the facts of this case, the appellant acted "knowingly" with an awareness that firing a loaded weapon at the victim was reasonably certain to produce death. <u>See</u> Tenn. Code Ann. § 39-11-106(20) (1991). Thus, we conclude that there is evidence to support "knowing" conduct, and, therefore, an attempted second degree murder conviction. Accordingly, the appellant's conviction for attempted first degree murder is modified to reflect the lesser offense of attempted second degree murder. We remand to the trial court for resentencing for this offense.

B. ATTEMPTED SECOND DEGREE MURDER

The appellant also challenges the jury's verdict finding him guilty of the attempted second degree murder of Michael Smith. <u>See</u> Tenn. Code Ann. § 39-13-210(a)(1); Tenn. Code Ann. § 39-12-101(a). Specifically, he argues that the proof failed to show that he was aware that his conduct was reasonably certain to cause Smith's death. Rather, he asserts that the proof established that the shooting of Michael Smith was a "drug induced and wildly reckless act."

Again, once a homicide is established it is presumed to be second degree murder. <u>Brown</u>, 836 S.W.2d at 543. In order to support a conviction for attempted second degree murder, the proof must establish that the appellant

8

knowingly attempted to kill Smith, without adequate provocation and with the belief that his conduct would result in Smith's death without further conduct on his part. See State v. Belle, No. 03C01-9503-CR-00094 (Tenn. Crim. App. at Knoxville, Mar. 6, 1996), perm. to appeal denied, (Tenn. Sept. 16, 1996) (citation omitted). The proof at trial established that, once the appellant began firing upon the house, Michael Smith got out of the car and asked the appellant what he was doing. The appellant turned and shot Smith point blank in the chest. There is no proof that Smith either provoked or threatened the appellant. Moreover, there was no proof introduced at trial to indicate the appellant's alleged level of intoxication. Accordingly, the proof supports the jury's verdict finding the appellant guilty, beyond a reasonable doubt, of attempted second degree murder. This issue is without merit.

## II. Double Jeopardy

The appellant next argues that, under State v. Anthony, 817 S.W.2d at 299, due process dictates that his convictions for the aggravated assaults of Michael Smith and Keith Fason are necessarily incidental to his respective convictions for attempted first and second degree murder and as such, cannot stand. We find, however, that the factual circumstances present an issue of double jeopardy rather than one of due process. See State v. Denton, 938 S.W.2d 373 (Tenn. 1996). Count one of the indictment charged the appellant with attempted first degree murder of Michael Smith, and count two charged the appellant with aggravated assault of Michael Smith. It is undisputed that only one shot was fired at the victim Michael Smith, with that bullet striking the victim in his chest. The State concedes that the same evidence was used to convict the appellant of both aggravated assault and attempted second degree murder. Accordingly, the State acknowledges that the appellant's conviction for

9

aggravated assault violates double jeopardy principles and cannot stand. We agree. We affirm the appellant's conviction for attempted second degree murder and reverse and dismiss the appellant's conviction for aggravated assault. See, e.g., Denton, 938 S.W.2d at 382; State v. Hall, No. 02C01-9607-CC-00211 (Tenn. Crim. App. at Jackson, Jan. 28, 1997); State v. Adams, No. 02C01-9512-CC-00376 (Tenn. Crim. App. at Jackson, Jan. 3, 1997), perm. to appeal denied, (Tenn. June 2, 1997).

Count three of the indictment charged the appellant with attempted first degree murder of Keith Fason and count four charged the appellant with aggravated assault of Keith Fason. With reference to these convictions, however, the State, on appeal, argues that the proof supports the commission of separate and distinct offenses. Specifically, the State now argues that the aggravated assault was established by the appellant's act of shooting at the front door. In support of the attempted second degree murder conviction, the State relies upon the gunshot fired by the appellant through the window. Contrary to the contemporaneous argument now advanced by the State, the record, at the trial level, reveals that the State, in its argument to the jury, relied upon the shot fired through the window to support both convictions.[4] Indeed, the record reflects that the clear intent of the State was to proceed as to both victims upon charges of aggravated assault as an alternative course of prosecution should the evidence fail to support convictions for attempted homicide. Moreover, the trial judge repeatedly noted that the appellant should not have convictions for "both attempted homicides and also the aggravated assaults, but [conceded that he

---

[4]The State's position on this issue is indicated in both its opening statement and its closing argument. One such illustration is noted by the prosecutor's following remarks: "Ladies and gentlemen, keep in mind that we have aggravated assault, and we also have attempted murder. We are really talking about one incident, but we are talking about two different individuals." (emphasis added).

did not] know procedurally how to handle it."[5]

In Denton, 938 S.W.2d at 373, our supreme court extended double jeopardy protection under the Tennessee Constitution beyond that provided by the federal constitution. Hall, No. 02C01-9607-CC-00211. Specifically, the court, going beyond Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182 (1932), promulgated the following analysis to determine whether the punishment for multiple convictions for a single criminal action violates principles of double jeopardy:

I. a Blockburger analysis of the statutory offenses;[6]

II. an analysis, guided by the principles of Duhac v. State, 505 S.W.2d 237 (Tenn. 1973), of the evidence used to prove the offenses;[7]

III. a consideration of whether there were multiple victims or discrete acts; and

IV. a comparison of the purposes of the respective statutes.

Denton, 938 S.W.2d.

Clearly, under a Blockburger analysis, the offenses of attempted first degree murder and aggravated assault (1) are separate and distinct statutory offenses, (2) neither offense is included in the other,[8] (3) both require proof of different elements, (4) each require proof of additional facts not required by the other, and (5) the legislative intent suggests that two separate offenses were

---

[5]As the supreme court noted in Denton, 938 S.W.2d at 383, n. 22, "the trial court should have instructed the jury that they could convict on only aggravated assault or attempted homicide."

[6] "[W]hether each statutory provision requires proof of an additional fact which the other does not." Denton, 938 S.W.2d at 379 (quoting State v. Black, 524 S.W.2d 913, 919 (Tenn. 1975) (quoting Blockburger, 284 U.S. at 304, 52 S.Ct. at 182 (1932)).

[7]"[T]he test is whether the same evidence is necessary to prove both offenses." Denton, 938 S.W.2d at 380 (quoting Duhac, 505 S.W.2d at 241).

[8]In State v. Trusty, 919 S.W.2d 305 (Tenn. 1996), our supreme court held that aggravated assault is neither a lesser grade nor class of the offense of attempt to commit first degree murder.

11

intended. Denton, 938 S.W.2d at 379 (quoting State v. Black, 524 S.W.2d 913, 919 (Tenn. 1975) (quoting Blockburger, 284 U.S. at 304, 52 S.Ct. at 182 (1932)).

Having survived Blockburger, we next focus upon whether the evidence used to support both aggravated assault and attempted first degree murder convictions is the same. Based upon our previous review of the State's position at trial, the trial court's pronouncements of its position relative thereto, and the proof in the record, we conclude that "the same evidence [was] necessary to prove both offenses." Denton, 938 S.W.2d at 380 (quoting Duhac, 505 S.W.2d at 241). Accordingly, we conclude that the appellant's convictions for the attempted second degree murder and aggravated assault of Keith Fason are the "same" for double jeopardy purposes. Thus, only one conviction can be sustained. We affirm the appellant's conviction for the attempted second degree murder of Keith Fason.[9] The conviction for aggravated assault is reversed, the accompanying sentence is vacated, and this count of the indictment is dismissed.

Parenthetically, we note that, even if we had accepted the State's argument, the appellant's act of shooting at the front door would not have supported a conviction for aggravated assault under a sufficiency of evidence analysis. Our supreme court has recently held that a conviction for aggravated assault cannot stand absent evidence that the accused knew that the house was occupied during the initial shooting as the proof cannot establish that the accused intentionally or knowingly caused a victim to fear imminent bodily injury. See State v. Wilson, 924 S.W.2d 648, 650 (Tenn. 1996). The proof is clear in this case that the appellant was unaware of Fason's presence in the house at the time of the initial shooting into the front door. Apparently, in view of this

_____

[9]This ruling reflects our previous modification of the appellant's conviction for attempted first degree murder to the lesser offense of attempted second degree murder.

12

ruling, the State argues that the facts support a "reckless" aggravated assault as defined by Tenn. Code Ann. § 39-13-102(a)(2)(B). However, the predicate assault for this offense requires the infliction of "bodily injury to another." Tenn. Code Ann. § 39-13-101(a)(1). Because no bodily injury resulted from the initial shooting by the appellant, this offense is inapplicable.

### III. Reasonable Doubt Instruction

Next, the appellant contends that the trial court committed error by failing to include language instructing the jury that the State has the burden of proving a defendant's guilt to a moral certainty.[10] Specifically, he complains that the instruction provided by the trial court "emphasize[d] the level of uncertainty which the standard of proof beyond reasonable doubt would permit." Although we agree with the State that the appellant has waived this issue for failure to request a particular jury instruction and failure to object to the instruction given, we elect to proceed upon the merits of this claim. See Tenn. R. App. P. 36(a). See also State v. Haynes, 720 S.W.2d 76, 85 (Tenn. Crim. App. 1986).

In state criminal trials, the Due Process Clause of the Fourteenth Amendment protects the accused from conviction unless the prosecution persuades the fact-finder "beyond a reasonable doubt" of the facts necessary to establish each element of the offense charged. Sullivan v. Louisiana, 508 U.S. 275, 278, 113 S.Ct. 2078, 2080-81 (1993) (citations omitted); In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072-73 (1970); see also Jackson v. Virginia, 443 U.S. at 320 n. 14, 99 S.Ct. at 2790 n.14. The "beyond a reasonable doubt standard" provides concrete substance for the presumption of innocence; "that

---

[10]Ironically, we note that challenges to the reasonable doubt jury instruction in the past have focused almost exclusively upon inclusion of the moral certainty language.

bedrock axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law." Winship, 397 U.S. at 364, 90 S.Ct. at 1072; see also Victor v. Nebraska, 511 U.S. 1, 5, 114 S.Ct. 1239, 1243 (1994). However, the Constitution does not require courts to define reasonable doubt for the jury, or, if they elect to define reasonable doubt to use any particular formula or words. See Holland v. United States, 348 U.S. 121, 140, 75 S.Ct. 127, 138 (1954); see also Victor, 511 U.S. at 5, 114 S.Ct. at 1243. Indeed, the Court noted that "attempts to explain the term "reasonable doubt" do not usually result in making it any clearer to the minds of the jury."[11] Holland, 348 U.S. at 140, 75 S.Ct. at 138; see also United States v. Headspeath, 852 F.2d 753, 755 (4th Cir. 1988); United States v. Olmstead, 832 F.2d 642, 645 (1st Cir. 1987), cert. denied, 486 U.S. 1009, 108 S.Ct. 1739 (1988) ("reasonable doubt is a fundamental concept that does not easily lend itself to refinement or definement"); United States v. Lawson, 507 F.2d 433, 443 (7th Cir. 1974), cert. denied, 420 U.S. 1004, 95 S.Ct. 1446 (1975) overruled on other grounds by United States v. Hollinger, 553 F.2d 535 (7th Cir. 1977).

Nonetheless, a jury instruction that permits conviction on a lesser standard -- by shifting the burden of proof from the prosecution to the defendant, or by suggesting that a higher degree of doubt than 'reasonable doubt' is necessary for acquittal is constitutionally deficient and grounds for reversal. Sullivan, 508 U.S. at 280, 113 S.Ct. at 2080-2082. Accord Lanigan v. Maloney, 853 F.2d 40, 48 (1st Cir. 1988), cert. denied, 488 U.S. 1007, 109 S.Ct. 788 (1989) (although the court need not define reasonable doubt, any definition given must not reduce the government's burden of proof). In determining whether the instruction is constitutionally deficient, the reviewing court must examine the charge as a whole and consider how reasonable jurors could have understood

---

[11]Interestingly, we note that some jurisdictions strongly advise against defining the term "reasonable doubt." See, e.g., United States v. Reives, 15 F.3d 42, 45 (4th Cr.), cert. denied, 512 U.S. 1207, 114 S.Ct. 2679 (1994); Lawson, 507 F.2d 433; Commonwealth v. Goforth, 692 S.W.2d 803 (Ky. 1985).

the charge as correctly conveying the concept of reasonable doubt. Victor, 511

U.S. at 6, 114 S.Ct. at 1243; Cage v. Louisiana, 498 U.S. 39, 41, 111 S.Ct. 328,

329 (1990) (*per curium*) (citation omitted); Cupp v. Naughten, 414 U.S. 141,

146-147, 94 S.Ct. 396, 400-01 (1973). Accordingly, an asserted error in a

reasonable doubt instruction may be innocuous or inconsequential when viewed

in the context of the charge as a whole. See Vargas v. Keane, 86 F.3d 1273,

1277 (2nd Cir.), cert. denied, -- U.S. --, 117 S.Ct. 240 (1996).

> In the present case, the trial court instructed the jury:

> The law presumes that the defendant is innocent of the charge against him. This presumption remains with the defendant thought every stage of the trial, and it is not overcome unless from all of the evidence in the case, you are convinced beyond a reasonable doubt that the defendant is guilty.

> The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden never shifts, but remains on the State throughout the trial of the case. The defendant is not required to prove his innocence.

> *A reasonable doubt is a doubt based upon reason and common sense after careful and impartial consideration of all of the evidence in the case. It is not necessary that the defendant's guilt be proved beyond all possible doubt, as absolute certainty of guilt is not demanded by law to convict of any criminal charge. A reasonable doubt is just that - - a doubt that is reasonable after an examination of all of the facts in the case. If you find that the State has not proven every element of the offense beyond a reasonable doubt, then you should find the defendant not guilty.*[12]

> The State must prove beyond a reasonable doubt all the elements of the crime charged. . .

(Emphasis added to challenged portion of instruction).

Again, the appellant claims that the instruction defining "reasonable

doubt" is constitutionally deficient. In support of his argument, the appellant

adopts the position of one panel of this court. See State v. Denton, No. 02C01-

9409-CR-00186 (Tenn. Crim. App. at Jackson, Aug. 2, 1996). The reviewing

panel, in Denton, expressed concerned that the pattern instruction, 2.03(a), does

---

[12]See T.P.I. Crim. 2.03(a) (4th ed.).

15

not adequately convey the evidentiary certainty required under the reasonable doubt standard. Denton, No. 02C01-9409-CR-00186. Specifically, the panel quoted two excerpts from the instruction, i.e., "a doubt based upon reason and common sense after careful and impartial consideration of all the evidence" and "absolute certainty of the defendant's guilt is not necessary to convict him."

Tennessee Pattern Instruction 2.03(a) tracks virtually identical language of pattern reasonable doubt instructions approved by a majority of the federal circuits.[13] See, e.g., United States v. Velasquez, 980 F.2d 1275, 1278 (9th Cir.

1992), cert. denied, 508 U.S. 979, 113 S.Ct. 2979 (1993); United States v. Campbell, 874 F.2d 838, 841 (1st Cir. 1989); United States v. Hall, 854 F.2d 1036, 1039 (7th Cir. 1988); United States v. Kirby, 838 F.2d 189, 191-192 (6th Cir. 1988); United States v. Colon, 835 F.2d 27, 31-32 (2nd Cir. 1987), cert. denied, 485 U.S. 980, 108 S.Ct. 1279 (1988); United States v. Dilg, 700 F.2d 620 (11th Cir. 1983); United States v. Alonzo, 681 F.2d 997, 1002 (5th Cir.), cert. denied, 459 U.S. 1021, 103 S.Ct. 386 (1982); United States v. Robertson, 588 F.2d 575, 579 (8th Cir. 1978), cert. denied, 441 U.S. 945, 99 S.Ct. 2166 (1979). Moreover, the questioned language "based upon reason and common sense"

---

[13]The most notable exception between the Tennessee Pattern Instruction and those employed by the federal court is the Tennessee instruction's omission of the language "hesitate to act." Although the Supreme Court has indicated a preference for these terms, see Holland, 348 U.S. at 126, 75 S.Ct. at 130; accord United States v. Conley, 523 F.2d 650, 655 (8th Cir. 1975), cert. denied, 424 U.S. 920, 96 S.Ct. 1125 (1976) (reasonable doubt instruction must be couched in terms of hesitation to act), omission of this language from an instruction does not amount to reversible error. See, e.g., United States v. Cleveland, 106 F.3d 1056, 1062 (1st Cir. 1997), petition for cert. filed, (Apr. 30, 1997); United States v. Barrera-Gonzales, 952 F.2d 1269, 1272 (10th Cir. 1992); United States v. Bustillo, 789 F.2d 1364, 1368 (9th Cir. 1986);. Moreover, the use of this terminology has repeatedly been criticized. See, e.g., Victor, 511 U.S. at ---. 114 S.Ct. at 1252 (Ginsberg, J. concurring in part and concurring in judgment) (commenting that the 1987 Report to the Judicial Conference of the United States regards the analogy underlying the "hesitation to act" formulation as being misplaced ); Gilday v. Callahan, 59 F.3d 257, 264 (1st Cir. 1995), cert. denied, -- U.S. --. 116 S.Ct. 1269 (1996) ("hesitate to act" language is unhelpful); Vargas, 86 F.3d at 1274; United States v. Reese, 33 F.3d 166, 172 (2nd Cir. 1994), cert. denied, 513 U.S. 1092, 115 S.Ct. 756 (1995); United States v. O'Brien, 972 F.2d 12, 15 (1st Cir. 1992) ("hesitation to act" language trivializes burden of proof); United States v. Noone, 913 F.2d 20, 28-29 (1st Cir. 1990), cert. denied, 500 U.S. 906, 111 S.Ct. 1686 (1991)). Thus, failure to include "hesitation to act" language in the Tennessee Pattern Instruction is not error.

and "absolute certainty is not required" has repeatedly been upheld as passing constitutional muster. See, e.g., United States v. Kime, 99 F.3d 870 (8th Cir. 1996), cert. denied, -- U.S. --, 117 S.Ct. 1015 (1997); United States v. Miller, 84 F.3d 1244 (10th Cir.), cert. denied, -- U.S. --, 117 S.Ct. 443 (1996) overruled on other grounds by United States v. Holland, 116 F.3d 1353 (10th Cir. 1997); United States v. Campbell, 61 F.3d 976, 980-981 (1st Cir. 1995), cert. denied, -- U.S. --. 116 S.Ct. 1556 (1996); Hall, 854 F.2d at 1038-1039; United States v. Rahm, 993 F.2d 1405, 1412 (9th Cir. 1993).

We do not find that the instruction taken separately renders the reasonable doubt instruction constitutionally deficient. Additionally, considering this language in the context of the full charge, we find no reasonable likelihood that the jury understood the instruction to permit conviction after anything but a process of careful deliberation or upon less than proof beyond a reasonable doubt. This issue is without merit.

## IV. Sentencing

In his final challenge, the appellant avers that the trial court erred by imposing excessive sentences and by ordering his convictions for attempted homicide to run consecutively. Initially, we note that, in view of our previous rulings in this opinion, our review extends only to his convictions for attempted second degree murder of Michael Smith and possession of a deadly weapon during the commission of a felony.

Review, by this court, of the length, range, or manner of service of a sentence is *de novo* with a presumption that the determination made by the trial court is correct. Tenn. Code Ann. § 40-35-401(d) (1990). This presumption only

17

applies, however, if the record demonstrates that the trial court properly considered relevant sentencing principles. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In the case before us, the trial court considered relevant sentencing principles; thus, the presumption applies. Moreover, this court may only modify a sentence if the sentence is excessive or the manner of service is inappropriate. State v. Russell, 773 S.W.2d 913, 915 (Tenn. 1989). On appeal, the appellant bears the burden of showing that the sentence imposed was improper. Sentencing Commission Comments, Tenn. Code Ann. § 40-35-401(d).

The proof at the sentencing hearing revealed that the appellant is a forty-two year old father of two children, a ninth grade drop out, and a chronic

substance abuser. He receives disability benefits for a back problem and was unemployed prior to the present offenses. His prior criminal record consists of a conviction for the unlawful use of a weapon in Illinois in 1993; a 1982 conviction for escape; a 1977 conviction for armed robbery; and 1973 convictions for auto theft and grand larceny.

Michael Smith, the only witness at the sentencing hearing, testified that he is the appellant's cousin and is also a victim of the instant offenses. He stated that the appellant shot him one inch from his heart. As a consequence of the shooting, Smith was hospitalized for one month, consisting of nine days in the Intensive Care Unit. Smith underwent two surgeries due to the injuries received to "his kidney, spleen, liver, heart, and lungs . . . ." As a result of this incident, Smith asserted that "I am destroyed for the rest of my life."

18

## A. LENGTH OF SENTENCES

In determining the appropriate sentence for the attempted second degree murder of Michael Smith, the trial court found the following enhancement factors applicable: (1) the defendant has a previous history of criminal convictions or behavior, Tenn. Code Ann. § 40-35-114(1) (1995 Supp.); (6) that the personal injuries inflicted were particularly great, Tenn. Code Ann. § 40-35-114(6); and (9) the defendant possessed a firearm during the commission of the offense, Tenn. Code Ann. § 40-35-114(9). Regarding the weapons charge, the trial court applied enhancement factor (1) that the defendant has a previous history of criminal convictions and behavior. Tenn. Code Ann. § 40-35-114(1). The trial court concluded that no mitigating factors were applicable. Accordingly, the court imposed a sentence of eleven years for the attempted second degree murder conviction and three years for the possession of a weapon during a felony conviction.[14]

The appellant does not dispute the applicability of the enhancement factors utilized by the trial court; rather he contests the trial court's refusal to find as mitigating factors (1) the appellant's long history of substance abuse and (2) that the appellant aided Smith by ensuring treatment for his injury. We conclude that the trial court properly rejected these proffered mitigating factors. As the appellant concedes, the 1989 Code expressly excludes the voluntary use of intoxicants as a "mental or physical condition that significantly reduce[s] [a defendant's] culpability." See Tenn. Code Ann. § 40-35-113(8) (1990). Nonetheless, he argues that this factor should be considered in light of the fact that "the shooting . . .would not have occurred apart from the influence of the drugs." In other words, the appellant concedes that his drug abuse should not reduce his culpability as to his guilt of the crimes, but should be considered "in

---

[14]Before imposing sentences, the trial court found that the appropriate sentencing range was within range I for the attempted homicide offenses, but range II for the aggravated assaults and weapons charge. The appellant does not challenge this classification on appeal.

fashioning an appropriate sentence." Again, the 1989 <u>Sentencing</u> Reform Act excludes involuntary intoxication as a mitigating factor in <u>sentencing</u>. Tenn. Code Ann. § 40-35-113(8). Moreover, the appellant has failed to present any evidence that he was, in fact, intoxicated at the time the offenses were committed. This contention is without merit.

The appellant also argues that his efforts to assist the injured Smith should be considered in mitigation of his punishment. Tenn. Code Ann. § 40-35-113(13). The proof does not support this assertion. Indeed, the testimony at the sentencing hearing revealed that the appellant refused to transport the victim to the hospital. Fortunately for Smith, the appellant met Donald Morrow on the street. It was only by this chance encounter that medical attention for Smith was foreseeable, but only after the appellant pushed the victim out of his vehicle and onto the street. This factor was properly rejected by the trial court.

Upon *de novo* review, we agree with the trial court that no mitigating factors are applicable to the instant offenses. Moreover, we conclude that the proof supports the trial court's application of three enhancement factors to the offense of attempted second degree murder of Michael Smith and one enhancement factor to the weapons charge. When there are enhancement factors and no mitigating factors, the trial court may set the sentence above the minimum within the applicable sentencing range, but still within the range. Tenn. Code Ann. § 40-35-210(d). The appellant was convicted as a range I offender of a class B felony, and as a range II offender of a class E felony. Thus, the sentence range for the appellant is eight to twelve years for the attempted second degree murder conviction, and two to four years for the weapon conviction. <u>See</u> Tenn. Code Ann. § 40-35-112(a)(2); -112(b)(5). The court imposed sentences of eleven years and three years for the respective convictions. We find the length of these sentences to be justified and not

20

excessive under the guidelines of the 1989 Sentencing Act. This issue is without merit.

## B. CONSECUTIVE SENTENCES

If a defendant is convicted of more than one criminal offense, the court may order the sentences to run consecutively. Tenn. Code Ann. § 40-35-115(1990). In the present case, the trial court ordered that the two attempted homicide convictions run consecutively based upon the appellant's classification as a dangerous offender and the appellant's extensive criminal background. The appellant contests the trial court's classification of him as a "dangerous offender," arguing the lack of aggravating circumstances to support this status. Because we have modified the appellant's conviction from attempted first degree murder to attempted second degree murder and remanded this conviction to the trial court for resentencing, we are precluded from reviewing whether the aggregate sentence imposed is reasonably related to the severity of the offenses and is necessary to protect the public from further criminal acts of the appellant. See State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995). The determination of this issue remains with the trial court on remand. However, we are able to evaluate the appellant's classification as a "dangerous offender."

In Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976), our supreme court held that "[a] defendant may be classified as a dangerous offender if the crimes for which he is convicted indicate that he has little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." (Emphasis added). See also Tenn. Code Ann. § 40-35-115(b)(4); Wilkerson, 905 S.W.2d at 937. If a court decides to impose consecutive sentences based upon the inherently dangerous nature of the instant offenses, the court should base its decision upon the presence of aggravating circumstances and not merely on the fact that two or more dangerous crimes

were committed.  Gray, 538 S.W.2d at 393.  In the present case, the appellant armed himself with a loaded .380 handgun, drove to 236 Circle Drive to "get even" with Ms. Washington for having him arrested, and proceeded to wantonly fire the weapon at the house.  During this episode, two victims were injured, i.e., Mr. Smith suffering a direct gunshot wound to the chest, and Mr. Fason receiving injuries from flying debris.  Immediately after the shooting, the appellant refused to seek medical attention for the semi-conscious Smith. The proof before us clearly establishes that the appellant had no hesitation about committing a crime when the risk to human life was high and that the appellant has little or no regard for human life.  Accordingly, the trial court's classification of the appellant as a dangerous offender is warranted.

## V.  Conclusion

After a thorough review of the record and the applicable law, we conclude that the evidence is insufficient to support a conviction for the attempted first degree murder of Keith Fason.  We reverse the appellant's conviction for attempted first degree murder, modify the judgment to reflect a conviction for attempted murder in the second degree, and remand to the trial court for resentencing.  Additionally, in accordance with the principles announced in State v. Denton, 938 S.W.2d at 373, we dismiss the appellant's convictions for aggravated assault and vacate the accompanying sentences.  We affirm the appellant's remaining convictions for attempted second degree murder of Michael Smith and possession of a deadly weapon.  Moreover, we affirm the length of the sentences imposed for these convictions and the trial court's finding that the appellant is a dangerous offender.  Accordingly, we remand this cause to the trial court for entry of judgments of conviction consistent with this opinion and for re-sentencing regarding the modified conviction for the attempted second

22

degree murder of Keith Fason and for determination of whether consecutive

sentencing is appropriate.


_____
DAVID G. HAYES, Judge


CONCUR:


_____
JERRY L. SMITH, Judge


_____
THOMAS T. WOODALL, Judge